```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
```

|                                          |                              |
|------------------------------------------|------------------------------|
| JACKELINE MAYNARD,                       )|                              |
| Mother and Next Friend                   )|                              |
| of G.M., a minor,                        )|                              |
|                                          )|                              |
|          Plaintiff,                      )|                              |
|                                          )| Civil Action No. 09-131 (EGS)|
|          v.                              )|                              |
|                                          )|                              |
| DISTRICT OF COLUMBIA,                    )|                              |
|                                          )|                              |
|          Defendant.                      )|                              |

## MEMORANDUM OPINION

Plaintiff Jackeline Maynard seeks review of an administrative decision denying her request for reimbursement of the costs of her minor son's attendance at the Accotink Academy ("Accotink"), a private school located in Springfield, Virginia. Plaintiff argues that she is entitled to tuition reimbursement because the District of Columbia Public Schools ("DCPS") denied her son a free appropriate public education ("FAPE") as required by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*, by failing to develop an Individualized Education Program ("IEP") for her son prior to the first day of school in August 2008. Pending before the Court are cross-motions for summary judgment. Upon consideration of the motions, the responses and replies thereto, the applicable law, the administrative record, the arguments made by counsel during the motions hearings held on March 3, 2010 and March 9, 2010, and for

the reasons stated below, the Court concludes that the hearing officer's denial of plaintiff's reimbursement request should be **AFFIRMED**. Accordingly, defendant's motion for summary judgment is **GRANTED,** and plaintiff's motion for summary judgment is **DENIED**.

I.  BACKGROUND

   A.  G.M.'s Attendance at Accotink & Enrollment in DCPS

Plaintiff is the mother of G.M., a 15-year old boy who is eligible for special education services under the IDEA as both learning disabled and other health impaired. Pl.'s Statement of Material Facts ("SMF") ¶ 1. Achievement testing in September 2007 indicated that G.M. was functioning at a third grade level in most academic subjects. Pl.'s SMF ¶ 2. G.M. requires specialized academic instruction, as well as speech and language therapy, and psychological counseling. Pl.'s SMF ¶ 3.

Until the 2006-2007 school year, G.M. attended public schools in the District of Columbia. Pl.'s SMF ¶ 4. In the Fall of 2007, however, displeased with G.M.'s academic progress, Ms. Maynard enrolled G.M. at Accotink, a private school for children with learning disabilities. Pl.'s SMF ¶ 5. On October 16, 2007, after conducting a 30-day review of G.M., Accotink revised G.M.'s IEP (the "Accotink IEP"). *See generally* Administrative Record

2

("AR") 52-63.[1] The Accotink IEP indicates that G.M. is to receive 30 hours of special education and related services per week, including 27 hours of specialized instruction and one hour of psychosocial services. *See* Def.'s SMF ¶ 5. It also includes annual goals and short-term objectives in each following areas: Psychosocial-Group Therapy, Communication/Semantics, Communication/Phonemic Awareness, Communication/Auditory Processing, and Classroom Behavior.

Upon completion of the 2007-2008 school year at Accotink, Ms. Maynard decided to enroll G.M. at H.D. Woodson Senior High School ("Woodson") "as money to continue at Accotink was not available." Pl.'s SMF ¶ 8; *see also* Def.'s SMF ¶ 7. Accordingly, on July 11, 2008, Ms. Maynard registered G.M. as a special education student at Woodson, and provided the registrar, Sharonda Wilson, with a copy of G.M.'s Accotink IEP. Pl.'s SMF ¶ 10. Plaintiff testified that she requested a prompt meeting with the special education coordinator to ensure that an IEP

---

[1] Plaintiff contends that the Court should refer to the Accotink IEP as the "Accotink education plan" because it is not a "valid IEP" within the meaning of the IDEA. *See* Pl.'s Response to Def.'s SMF ¶ 5 ("Accotink developed an education plan for G.M., not an IEP, because the legal requirements for an IEP were not met."); *see also infra* n.4 (discussing the statutory deficiencies of the Accotink IEP). While sensitive to this request, the Court concludes that because the parties referred to the education plan as an IEP at the administrative level there is no prejudice in referring to the education plan as the Accotink IEP. Nevertheless, as discussed *infra*, *see* n.4, the Court agrees that the Accotink IEP fails to satisfy the IDEA's statutory requirements for a valid IEP. *See generally* 20 U.S.C. § 1414(d).

3

would be developed for G.M. before the start of the school year. Pl.'s SMF ¶ 11. She was advised at this meeting that the special education coordinator was on vacation and was not immediately available, but that she would be contacted by the special education coordinator to schedule a meeting. Pl.'s SMF ¶ 12; Def.'s SMF ¶ 11. After completing G.M.'s enrollment on July 16, 2008, Ms. Maynard testified that over the next two weeks, she made two additional trips to Woodson to inquire about an IEP meeting for G.M., and was informed on both occasions that "everyone was on vacation." Pl.'s SMF ¶¶ 15-16.[2]

Having received no response to her request for an IEP meeting, on August 2, 2008, plaintiff sent a letter to DCPS providing ten days notice of her intent to unilaterally enroll

---

[2] The District disputes that Ms. Maynard requested an IEP meeting when she enrolled G.M. at Woodson; the District also disputes that Ms. Maynard made two additional trips to Woodson to follow-up on her alleged request for an IEP meeting. Woodson's registrar, Ms. Wilson, testified that Ms. Maynard did not ask for an IEP meeting at registration, rather she just requested a meeting with the special education coordinator. *See* Pl.'s SMF ¶ 17. The registrar further testified that Ms. Maynard only visited Woodson to enroll G.M. and, as discussed *infra*, to hand-deliver her letter of intent to unilaterally enroll G.M. at Accotink. *See* Pl.'s SMF ¶ 17; Def.'s SMF ¶ 31. Nevertheless, despite these factual differences – which were acknowledged, but not resolved by the hearing officer – both parties agree that this case can and should be resolved by summary judgment motions. Indeed, at oral argument, the parties agreed that it was unnecessary for the Court to hear additional evidence in order to resolve the pending motions. The Court agrees, concluding that none of the parties' factual disputes are material to the Court's affirmance of the hearing officer's decision to deny plaintiff's reimbursement request.

4

G.M at Accotink and to request that DCPS pay for G.M.'s tuition there (the "10-Day Notice Letter").[3] Def.'s SMF ¶ 12. Ms. Maynard's letter states, in relevant part:

> I recently registered my son, [G.M.], with DC Public Schools. He is a special education student. I presented a copy of his most recent IEP at the time of registration and requested a prompt meeting to develop an IEP, including placement, for the upcoming school year. DCPS stated that it was not able to schedule a meeting at that time, and could not give me even an estimate of when such a meeting might be held.
>
> Without a current IEP including an appropriate placement, [G.M.] cannot receive a free and appropriate education, as is his right under the law. [G.M.] has been accepted at the Accotink School in Springfield, Virginia, which is capable of meeting his needs.
>
> Accordingly, notice is hereby formally given that I intend to enroll [G.M.] at the Accotink School ten (10) business days' after the date of this notice and to request DC Public Schools to fund the cost of his attendance there.

AR 81. Plaintiff's 10-Day Notice Letter was subsequently returned to her "UTF" (unable-to-forward). Accordingly, on August 15, 2008, Ms. Maynard hand-delivered copies of the 10-Day Notice Letter to Woodson's registrar and to DCPS headquarters. Def.'s SMF ¶ 17. Upon receipt, Woodson's registrar, Ms. Wilson,

---

[3] A parent's failure to provide notice of her intent to remove her child from the public school system provides independent grounds for a hearing officer to reduce or deny a parent's request for tuition reimbursement. *See* 34 C.F.R. § 300.148(d) ("The cost of reimbursement . . . may be reduced or denied . . . [if] . . .(ii) At least ten (10) business days (including any holidays that occur on a business day) prior to the removal of the child from the public school, the parents did not give written notice to the public agency . . . [.]").

gave the letter to Ms. Philips, Woodson's special education director. Pl.'s SMF ¶ 22. Plaintiff received no response from either Woodson or DCPS regarding her letter. Pl.'s SMF ¶ 18.

Despite having notified Woodson and DCPS that she planned to enroll G.M. at Accotink, plaintiff accompanied G.M. to Woodson on August 25, 2008 – the first day of school. Pl.'s SMF ¶ 26. Upon arrival, plaintiff was told that G.M. was not in the school's computer. Pl.'s SMF ¶ 26. After waiting approximately two hours and receiving no assistance, plaintiff left Woodson in order to take her other children to school. Pl.'s SMF ¶ 29. Plaintiff then attempted to enroll G.M. at Coolidge High School – another DCPS school where her other son was enrolled – but was informed that G.M.'s grade was full. Pl.'s SMF ¶ 29. Plaintiff did not return to Woodson and attempt to re-enroll G.M. there, nor did she have any further contact with DCPS regarding G.M. Def.'s SMF ¶ 24. Instead, Ms. Maynard contacted Accotink and enrolled G.M. for the 2008-2009 school year. Def.'s SMF ¶ 23. G.M. began attending classes at Accotink on August 28, 2008. Def.'s SMF ¶ 23.

**B. Plaintiff's Due Process Complaint & Administrative Hearing**

On September 18, 2008, plaintiff submitted a request for a due process hearing, alleging that DCPS had not held an IEP meeting for G.M., and was therefore unprepared to provide G.M. with a FAPE. Pl.'s SMF ¶ 31. A hearing was held on November 7,

2008.  The only witnesses were Ms. Maynard and Ms. Wilson.  *See generally* Administrative Hearing Transcript ("Hearing Tr.").

On November 17, 2008, the hearing officer issued a determination on plaintiff's due process complaint (the "November 2008 HOD").  *See* AR 3-14.  The hearing officer denied plaintiff's request for tuition reimbursement on two alternative grounds.  First, the hearing officer found that plaintiff was not entitled to tuition reimbursement because G.M. was not denied a FAPE.  Specifically, the hearing officer found that "DCPS's failure to convene an IEP meeting and develop an IEP for [G.M.] between July 15, 2008, when Parent completed the registration process for [G.M.], and early August of 2008, when Parent submitted to DCPS the 10-Day Notice of her intent to unilaterally place [G.M.] in a private school, did not constitute a denial of FAPE on DCPS's part and did not result in DCPS's inability to provide [G.M.] with a FAPE for SY 2008/09, because pursuant to 34 C.F.R. § 300.323(f), DCPS was entitled to provide [G.M.] with a FAPE by providing services comparable to those described in his IEP from the private school, which is located in another jurisdiction, until such time as DCPS either conducted evaluations for [G.M.] if it determined that evaluations were necessary, or it developed, adopted, and implemented a new IEP for [G.M.]."  AR 9.  Second, and alternatively, the hearing officer found that even if G.M. had been denied a FAPE, plaintiff was not entitled to

tuition reimbursement because the parent's actions were unreasonable. In support of this conclusion, the hearing officer pointed to the fact that plaintiff: "allowed DCPS less than one month to convene an IEP meeting and develop an IEP for [G.M.] before she decided to enroll [G.M.] in a private placement, even though it was summer at the time and school was out"; brought G.M. to Woodson on the first day of school "after she provided DCPS with written notice during the summer of 2008 of her intent to enroll [G.M.] in a private school"; "expect[ed] DCPS to have a schedule for a student who, according to the 10-Day Notice, was not supposed to be there"; waited at Woodson only two hours after she learned the school did not have a schedule for her son, and made no further attempts to contact DCPS. AR 9.

**C. This Action**

In response to the November 2008 HOD, plaintiff filed suit in this Court on January 23, 2009. In her complaint, plaintiff argues that the November 2008 HOD should be reversed because "the hearing officer misapplied the law to the record evidence, failed to acknowledge certain relevant facts, and omitted others." Compl. ¶ 70. Plaintiff asserts, *inter alia*, that the hearing officer (i) mistakenly determined that the Accotink IEP was a valid IEP; (ii) inappropriately relied on 34 C.F.R. § 300.323(f) in concluding that G.M. was not denied a FAPE; and (iii) erroneously found that Ms. Maynard had acted unreasonably. On

8

July 17, 2009, plaintiff filed a motion for summary judgment seeking reversal of the November 2008 HOD. The District subsequently filed a cross-motion for summary judgment, asking the Court to affirm the hearing officer's denial of tuition reimbursement. These motions are now ripe for determination by the Court.

## II. STATUTORY FRAMEWORK AND LEGAL STANDARD

### A. The IDEA

The IDEA was enacted "to ensure that all children with disabilities have available to them a [FAPE] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). It requires all states and the District of Columbia to provide resident children with disabilities a FAPE designed to meet their unique needs. *Id.* § 1412(a)(1).

The IDEA attempts to guarantee children with disabilities a FAPE by requiring states and the District of Columbia to institute a variety of detailed procedures. "'[T]he primary vehicle for implementing'" the goals of the statute "'is the [IEP], which the [IDEA] mandates for each child.'" *Harris v. District of Columbia*, 561 F. Supp. 2d 63, 65 (D.D.C. 2008) (citing *Honig v. Doe*, 484 U.S. 305, 311-12 (1988)). An IEP is a written statement that includes, among other things: (i) a

statement of the child's present levels of academic achievement and functional performance; (ii) a statement of measurable annual goals, including academic and functional goals; (iii) a description of the child's progress in meeting those goals; (iv) a statement of the special education and related services and supplementary aids and services to be provided to the child; and (v) an explanation of the extent, if any, to which the child will not participate with nondisabled children in any regular classes. *Id.* § 1414(d)(1)(A)(i). An "IEP Team" – which consists of the parents of the child with disability, not less than one regular education teacher of the child (if applicable), not less than one special education teacher or provider of the child, and a representative of the local education agency – is charged with developing, reviewing, and revising a child's IEP. *See id.* § 1414(d)(1)(B) (defining an IEP Team). Because the IEP must be "tailored to the unique needs" of each child, *Bd. of Educ. v. Rowley*, 458 U.S. 176, 181 (1982), it must be regularly revised in response to new information regarding the child's performance, behavior, and disabilities, and must be amended if its objectives are not met. *See* 20 U.S.C. §§ 1414(b)-(d). To be sufficient to confer a FAPE upon a given child, an IEP must be "reasonably calculated to enable the child to receive educational benefits." *Rowley*, 458 U.S. at 207. Each local educational agency is required to have an IEP in effect for each child with a

disability in the agency's jurisdiction at the beginning of each school year.  20 U.S.C. § 1414(d)(2)(A).

   **B.   Standard of Review**

Under the IDEA, a party aggrieved by a hearing officer's decision may bring a civil action challenging it in state or federal court.  *Id.* § 1415(i)(2)(A).  A court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as [it] determines is appropriate."  *Id.* § 1415(i)(2)(c).  If neither party introduces additional evidence, a motion for summary judgment acts as a motion for judgment based on the evidence in the record.  *Brown ex rel. E.M. v. District of Columbia*, 568 F. Supp. 2d 44, 50 (D.D.C. 2008).

The party challenging the administrative decision carries the burden of "persuading the court that the hearing officer was wrong." *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005) (internal quotation marks omitted).  While a court must give "'due weight'" to the hearing officer's determinations, *S.S. v. Howard Road Acad.*, 585 F. Supp. 2d 56, 63-64 (D.D.C. 2008) (quoting *Rowley*, 458 U.S. at 206), a hearing officer's decision without reasoned and specific findings deserves little deference.  *See Kerkam v. Superintendent, D.C. Pub. Schs.*, 931 F.2d 84, 87 (D.C. Cir. 1991).  Indeed, less

deference is appropriate than is the case in typical administrative proceedings. *See Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1988). Nevertheless, a court "may not substitute its own notions of sound educational policy for those of the school authorities." *S.S.*, 585 F. Supp. 2d at 63.

**III. ANALYSIS**

Plaintiff argues that the November 2008 HOD was erroneous and should be reversed. As discussed above, the hearing officer made two alternative conclusions of law in support of her denial of plaintiff's tuition reimbursement request. First, the hearing officer found that DCPS' failure to develop an IEP for G.M. before the first day of school did not constitute a denial of a FAPE because, pursuant to 34 C.F.R. § 300.323(f), DCPS was allowed to continue implementing the Accotink IEP until such time as it was able to develop and implement a new IEP for G.M. AR 9. Second, and alternatively, the hearing officer found that even if G.M. was denied a FAPE, plaintiff was not entitled to reimbursement because she acted unreasonably in enrolling G.M. at Accotink. AR 9. The Court will examine these conclusions in turn.

**A.  Reimbursement for Private-Placement Under the IDEA**

As a threshold matter, under the IDEA, a parent who unilaterally places her child at a private school without the consent of school officials does so "'at [her] own financial

12

risk.'" *Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7, 15 (1993) (quoting *Sch. Comm. of Burlington v. Dep't of Educ. of Mass.*, 471 U.S. 359, 373-74 (1985)). While a parent is eligible for reimbursement "if the court or hearing officer finds that the agency had not made FAPE available to the child in a timely manner prior to that enrollment and that the private placement is appropriate," 34 C.F.R. § 300.148(c); *see also Florence County*, 510 U.S. at 15 (parent may only receive tuition reimbursement "if a federal court concludes both that the public placement violated IDEA and that the private school placement was proper under the Act"), courts and hearing officers have "'broad discretion'" in deciding whether such reimbursement is warranted. *Florence County*, 510 U.S. at 16 (quoting *Burlington*, 471 U.S. at 374). Indeed, even if the Court concludes that a child was denied a FAPE, the cost of reimbursement may be reduced or denied "[u]pon a judicial finding of unreasonableness with respect to actions taken by the parents." 34 C.F.R. § 300.148(d)(3).

### B. The Hearing Officer's Reliance on 34 C.F.R. § 300.323(f)

The first issue before the Court is whether G.M. was denied a FAPE by DCPS' failure to convene an IEP meeting in advance of the first day of school in August 2008. The hearing officer found that this failure did not constitute a denial of a FAPE "because pursuant to 34 C.F.R. § 300.323(f), DCPS was entitled to provide [G.M.] with a FAPE by providing services comparable to

13

those described in his IEP from the private school, which is located in another jurisdiction, until such time as DCPS either conducted evaluations for [G.M.] if it determined that evaluations were necessary, or it developed, adopted, and implemented a new IEP for [G.M.]." AR 9. Plaintiff argues that this determination was erroneous, and the Court agrees.

Section 300.323(f), which governs the transfer of IEPs for disabled children who transfer schools from another State, provides:

> If a child with a disability (who had an IEP that was in effect in a previous public agency in another State) transfers to a public agency in a new State, and enrolls in a new school within the same school year, the new public agency (in consultation with the parents) must provide the child with FAPE (including services comparable to those described in the child's IEP from the previous public agency), until the new public agency -- (1) Conducts an evaluation . . . ; and (2) Develops, adopts, and implements a new IEP, if appropriate, that meets the applicable requirements . . . .

34 C.F.R. § 300.323(f). Given the facts of this case, the Court finds this regulation inapposite because (i) Accotink is a private academy, not a "public agency," and (ii) G.M. transferred schools during the summer, not "within the same school year." *See* Pl.'s Mot. at 11.[4]

---

[4] The Court is also persuaded by plaintiff's argument that the Accotink IEP "did not meet the requirements of the IDEA for a valid IEP." Pl.'s Mot. at 9. Specifically, the Court agrees that the Accotink IEP fails to satisfy 20 U.S.C. § 1414(d) because: (i) a local educational agency was not present or otherwise involved when the plan was developed as required by 20 U.S.C. § 1414(d)(1)(B)(iv); (ii) no regular education teacher

14

The Court concludes, therefore, that DCPS was required to develop its own IEP for G.M. prior to the start of the 2008-2009 school year. *See* Advisory Letter of the United States Department of Education, Office of Special Education & Rehabilitative Services (March 25, 2009) (providing guidance on the services that must be provided to "a child with a disability [who] is withdrawn from the public school setting for home schooling or attendance in a private school . . . and then subsequently return[ed] to a public school setting," and explaining that "once a child with a disability re-enrolls in the public school, the local education agency has an obligation to convene an IEP meeting and develop an appropriate IEP for the child")[5]; *see also* 34 C.F.R. § 300.323(a) ("At the beginning of each school year,

---

participated in the development of the Accotink IEP as required by 20 U.S.C. § 1414(d)(3)(C) and 20 U.S.C. § 1414(d)(4)(B); and (iii) the Accotink IEP failed to provide for speech and language services, which were recommended in the June 12, 2008 report. *See* Pl.'s Mot. at 9-11. The Court notes, however, that this issue was not presented for consideration by the hearing officer. Indeed, during the administrative hearing, Ms. Maynard testified that at the time she enrolled G.M. at Woodson, he had a valid IEP in place. *See* Hearing Tr. at 56:11-16 ("Q: So at the time of the school year or at the time that you enrolled [G.M.] at Woodson, he had a current IEP from Accotink, did he not?; [Ms. Maynard]: Yes.; Q: And you said you provided that to Ms. Wilson?; [Ms. Maynard]: Yes."). Nevertheless, even assuming that the hearing officer erred in failing to *sua sponte* address the issue, this error does not require reversal of the hearing officer's determination because her alternative finding of parental unreasonableness is not dependent on the validity of G.M.'s Accotink IEP. *See infra* Section III.C.

[5]  Plaintiff's motion to accept this supplemental authority is hereby **GRANTED.**

each public agency must have in effect, for each child with a disability within its jurisdiction, an IEP, as defined in § 300.320."). Given this affirmative obligation, the hearing officer's determination that "DCPS's failure to conduct an IEP meeting to develop an IEP for [G.M.] did not result in DCPS being unprepared to provide [G.M] with a FAPE" is devoid of any factual or legal support. AR 9. For purposes of this opinion, therefore, the Court will assume that DCPS' failure to timely convene and conduct an IEP meeting denied G.M. a FAPE.[6]

### C. The Hearing Officer's Finding of Parental Unreasonableness

As noted above, however, even if DCPS failed to make a FAPE timely available to G.M. prior to his enrollment at Accotink, plaintiff is entitled to reimbursement only if the hearing officer erred with respect to her alternative finding of

---

[6] If this had been the hearing officer's only conclusion of law, the Court would remand this case for further consideration of the evidence, and for further findings regarding whether DCPS' failure to timely convene an IEP meeting resulted in the substantive denial of a FAPE to G.M. *See Stanton v. District of Columbia,* No. 09-988, 2010 U.S. Dist. LEXIS 6609, at *10 (D.D.C. Jan. 27, 2010) ("Where the administrative record lacks pertinent findings and where neither party requested consideration of additional evidence, the [Court] may determine that the appropriate relief is a remand to the hearing officer for further proceedings." (citing *Reid*, 401 F.3d at 526) (internal quotation marks omitted)); *see also, e.g.*, *Peak v. District of Columbia*, 526 F. 2d 32, 33 (D.D.C. 2007) (remanding case to hearing officer, where the hearing officer made no findings as to whether DCPS denied the child a FAPE); *Goldstrom v. District of Columbia*, 319 F. Supp. 2d 5, 6 (D.D.C. 2004) (same). Because the November 2008 HOD can be affirmed on its alternative holding, however, the Court concludes that remand is unnecessary.

16

unreasonableness.[7]  *See* 34 C.F.R. § 300.148(d)(3) (explaining that reimbursement for a unilateral private placement "may be reduced or denied" if actions taken by a parent are found to be unreasonable).  As the party challenging the administrative determination, plaintiff has the burden "of persuading the court that the hearing officer was wrong" with respect to this determination.  *Reid*, 401 F.3d at 521.

In her decision, the hearing officer found that plaintiff acted unreasonably because she (i) "allowed DCPS less than one month to convene an IEP meeting and develop an IEP for [G.M.] before she decided to enroll [G.M.] in a private placement, even though it was summer at the time and school was out, and the school she wanted [G.M.] to attend was under construction and temporarily housed in another location"; (ii) "provided DCPS with written notice during the summer of 2008 of her intent to enroll [G.M.] in a private school and seek reimbursement of the costs from DCPS, [then] she showed up at [Woodson] with [G.M.] on the first day of SY 2008/2009 expecting DCPS to have a schedule for [G.M.] who, according to the 10-Day Notice, was not supposed to be there"; and (iii) "when DCPS indicated that it had no schedule for [G.M.] and he was not in the school's computer system, Parent

---

[7] This Court need not analyze whether Accotink was an appropriate placement, *see supra* Section III.A, as the District agreed to stipulate to this fact.  *See* Administrative Hearing Tr. at 13 (stipulation by the parties "that at least with respect to the IEP that the student currently has, Accotink is an appropriate placement").

17

waited along with the many other parents who were waiting for assistance, but she left two hours later, even though she had not received any assistance, and she never attempted to contact DCPS again." AR 9.

While plaintiff argues that these facts do not support a finding of unreasonableness, *see* Pl.'s Mot. at 12-15, the Court finds this argument unpersuasive. Indeed, having closely reviewed the administrative record, the Court finds that the hearing officer's determination is supported by reasoned and specific findings. *See Kerkam* 931 F.2d at 87 (concluding that "the district court gave insufficient weight to the findings of the hearing officer" where "taken as a whole, the administrative record contain[ed] sufficiently reasoned, specific findings to support the [hearing officer's] conclusion"); *see also Anderson v. District of Columbia,* 606 F. Supp. 2d 86, 90 n.1 (D.D.C. 2009) (explaining that "as long as the [hearing officer's] decision is 'sufficiently detailed to permit the district court to understand the basis for the hearing officer's resolution of the parents' claims,' the Court should afford it due deference" (quoting *J.P. ex rel. Peterson v. County Sch. Bd.*, 516 F.3d 254, 261 (4th Cir. 2008))). Moreover, as the trier of fact at the due process hearing, the hearing officer – unlike this Court – "ha[d] an opportunity to hear testimony in person, examine the demeanor of the witness and reactions of the participants, and [brought]

immeasurable experience and expertise in this specialized area." *A.I. v. District of Columbia*, 402 F. Supp. 2d 152, 170 (D.D.C. 2005); *see also id.* ("'The Hearing Officer was utilizing his knowledge and experience such that judicial deference to his expertise is especially appropriate.'" (quoting *Block v. Dist. of Columbia*, 748 F. Supp. 891, 896 (D.D.C. 1990))). Although the Court is sympathetic to plaintiff's efforts to obtain the best possible education for her son, and indeed might itself have reached a different conclusion on these facts, when giving all "due weight" to the hearing officer's factual findings and expertise, *Rowley*, 458 U.S. at 181, the Court concludes that plaintiff has failed to show by a preponderance of the evidence that the hearing officer was wrong in her determination of unreasonableness. *See generally Angevine v. Smith*, 959 F.2d 292, 295 (D.C. Cir. 1992) ("[A] party challenging the administrative determination must at least take on the burden of persuading the court that the hearing officer was wrong[.]"); *see also, e.g.*, *Parker v. Friendship Edison Pub. Charter Sch.*, 577 F. Supp. 2d 68, 75 (D.D.C. 2008) ("Upon consideration of the administrative record and the giving due weight to the hearing officer's decision, the Court concludes that [plaintiff] has not alleged sufficient facts to prove, by a preponderance of the evidence, that the hearing officer's determination is wrong."). The Court, therefore, declines to overturn the hearing officer's denial of

tuition reimbursement.  Accordingly, defendant's motion for summary judgment is **GRANTED** and plaintiff's motion for summary judgment is **DENIED**.

IV. CONCLUSION

For the reasons set forth above, the Court affirms the hearing officer's denial of tuition reimbursement to plaintiff. Accordingly, defendant's motion for summary judgment is hereby **GRANTED**, and plaintiff's motion for summary judgment is hereby **DENIED**.

    **SIGNED:**    **Emmet G. Sullivan**
                      **United States District Court Judge**
                      **April 5, 2010**